## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **BUC-EE'S, LTD.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **TEDDY'S MARKET, LLC; 149** | § | **CIVIL ACTION NO. _____** |
| **TM, LLC; 149 PROMINENCE,** | § | |
| **LLC; 3010 TM, LLC;** | § | |
| **BALLGROUND TM, LLC; 3843** | § | **JURY TRIAL DEMANDED** |
| **TM, LLC; 3843 GLENWOOD RE,** | § | |
| **LLC; KARAN AHUJA; and** | § | |
| **MICKEY KAPOOR,** | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

_____

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
_____

Plaintiff Buc-ee's, Ltd. ("Plaintiff' or "Buc-ee's"), by and through its undersigned counsel, files this Verified Complaint against Defendants Teddy's Market, LLC; 149 TM, LLC; 149 Prominence, LLC; 3010 TM, LLC; Ballground TM, LLC; 3843 TM, LLC; 3843 Glenwood RE, LLC; Karan Ahuja; and Mickey Kapoor (collectively, "Defendants") and hereby alleges as follows:

1

**PARTIES**

1.      Plaintiff is a Texas limited partnership with its principal place of business located at 327 FM 2004 Rd., Lake Jackson, Texas, 77566.

2.      Defendant Teddy's Market, LLC ("Teddy's") is a Georgia limited liability company with its principal place of business located at 3596 Old Milton Pkwy., Alpharetta, Georgia 30005.  Teddy's may be served with process by serving its registered agent, Gregina Watkins, at 3596 Old Milton Pkwy., Alpharetta, Georgia, 30005, or wherever she may be found.

3.      Defendant 149 TM, LLC ("149 TM") is a Georgia limited liability company with its principal place of business located at 149 Prominence Pkwy., Canton, Georgia, 30114, USA. 149 TM may be served with process by serving its registered agent, Karan Ahuja, at 3596 Old Milton Pkwy., Alpharetta, Georgia, 30005, or wherever he may be found.

4.      Defendant 149 Prominence, LLC is a Georgia limited liability company with its principal place of business located at 149 Prominence Point Pkwy., Canton, Georgia, 30114, USA. 149 Prominence, LLC may be served with process by serving its registered agent, Karan Ahuja, at 325 Crooked Stick Dr, Milton, Georgia, 30004, or wherever he may be found.

5. Defendant 3010 TM, LLC ("3010 TM") is a Georgia limited liability company with its principal place of business located at 3596 Old Milton Pkwy., Alpharetta, Georgia, 30005. 3010 TM may be served with process by serving its registered agent, Gregina Watkins, at 3010 Ball Ground Hwy., Ball Ground, Georgia, 30107, or wherever she may be found.

6. Defendant Ballground TM, LLC ("Ballground TM") is a Georgia limited liability company with its principal place of business located at 3010 Ball Ground Hwy., Ball Ground, Georgia, 30107, USA. Ballground TM may be served with process by serving its registered agent, Karan Ahuja, at 3596 Old Milton Pkwy., Alpharetta, Georgia, 30005, or wherever he may be found.

7. Defendant 3843 TM, LLC ("3843 TM") is a Georgia limited liability company with its principal place of business located at 3596 Old Milton Pkwy., Alpharetta, Georgia, 30005. 3843 TM may be served with process by serving its registered agent, Gregina Watkins, at 3596 Old Milton Pkwy., Alpharetta, Georgia, 30005, or wherever she may be found.

8. Defendant 3843 Glenwood RE, LLC ("3843 Glenwood RE") is a Georgia limited liability company with its principal place of business located at 3596 Old Milton Pkwy., Alpharetta, Georgia, 30005. 3843 Glenwood RE may be served

with process by serving its registered agent, Gregina Watkins, at 3596 Old Milton Pkwy., Alpharetta, Georgia, 30005, or wherever she may be found.

9.     Defendant Karan Ahuja is an individual residing in the state of Georgia. He can be served with process at his residence at 325 Crooked Stick Dr, Alpharetta, Georgia, 30004.

10.     Defendant Mickey Kapoor is an individual residing in the state of Georgia. He can be served with process at his residence at 8620 Colonial Pl, Duluth, Georgia, 30097.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, as it involves federal trademark law under the Lanham Act; pursuant to 28 U.S.C. § 1338(a), as it is a civil action arising under an Act of Congress relating to trademarks; pursuant to 28 U.S.C. § 1338(b), as it involves unfair competition related to a claim under trademark laws; pursuant to 28 U.S.C. § 1331, as it involves a federal question; and pursuant to the principles of supplemental jurisdiction under to 28 U.S.C. § 1367.

12.     This Court has general personal jurisdiction over Defendant Teddy's due to its residency and business activities in this judicial district. This Court has specific personal jurisdiction over Defendant Teddy's due to the nature and quality

of its actions toward the state of Georgia. The claims asserted herein arise out of and relate to such actions, and this Court's exercise of specific personal jurisdiction over Defendant Teddy's comports with traditional notions of fair play and substantial justice.

13.    This Court has general personal jurisdiction over Defendant 149 TM due to its residency and business activities in this judicial district. This Court has specific personal jurisdiction over Defendant 149 TM due to the nature and quality of its actions toward the state of Georgia. The claims asserted herein arise out of and relate to such actions, and this Court's exercise of specific personal jurisdiction over Defendant 149 TM comports with traditional notions of fair play and substantial justice.

14.    This Court has general personal jurisdiction over Defendant 149 Prominence due to its residency and business activities in this judicial district. This Court has specific personal jurisdiction over Defendant 149 Prominence due to the nature and quality of its actions toward the state of Georgia. The claims asserted herein arise out of and relate to such actions, and this Court's exercise of specific personal jurisdiction over Defendant 149 Prominence comports with traditional notions of fair play and substantial justice.

15.     This Court has general personal jurisdiction over Defendant 3010 TM due to its residency and business activities in this judicial district. This Court has specific personal jurisdiction over Defendant 3010 TM due to the nature and quality of its actions toward the state of Georgia. The claims asserted herein arise out of and relate to such actions, and this Court's exercise of specific personal jurisdiction over Defendant 3010 TM comports with traditional notions of fair play and substantial justice.

16.     This Court has general personal jurisdiction over Defendant Ballground TM due to its residency and business activities in this judicial district. This Court has specific personal jurisdiction over Defendant Ballground TM due to the nature and quality of its actions toward the state of Georgia. The claims asserted herein arise out of and relate to such actions, and this Court's exercise of specific personal jurisdiction over Ballground TM comports with traditional notions of fair play and substantial justice.

17.     This Court has general personal jurisdiction over Defendant 3843 TM due to its residency and business activities in this judicial district. This Court has specific personal jurisdiction over Defendant 3843 TM due to the nature and quality of its actions toward the state of Georgia. The claims asserted herein arise out of and

relate to such actions, and this Court's exercise of specific personal jurisdiction over 3843 TM, LLC comports with traditional notions of fair play and substantial justice.

18.    This Court has general personal jurisdiction over Defendant 3843 Glenwood RE due to its residency and business activities in this judicial district. This Court has specific personal jurisdiction over Defendant 3843 Glenwood RE due to the nature and quality of its actions toward the state of Georgia. The claims asserted herein arise out of and relate to such actions, and this Court's exercise of specific personal jurisdiction over 3843 Glenwood RE comports with traditional notions of fair play and substantial justice.

19.    This Court has general personal jurisdiction over Defendant Karan Ahuja because he resides in this judicial district.

20.    This Court has general personal jurisdiction over Defendant Mickey Kapoor because he resides in this judicial district.

21.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), as all Defendants reside in this judicial district and nearly all reside in this division, a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district and division, and Defendants are using infringing trademarks in this judicial district and division.

7

## FACTUAL ALLEGATIONS

22.    Plaintiff owns and operates a nationally renowned chain of convenience stores and travel centers under the mark "BUC-EE'S." For more than 40 years, Plaintiff has proudly provided quality convenience store and gas station services under the Buc-ee's brand, which has become widely known throughout the United States in connection with Plaintiff's offerings.

23.    Buc-ee's was founded in 1982 by Arch "Beaver" Aplin III, who opened the first Buc-ee's convenience store in the Lake Jackson, Texas area with the goal of providing a clean and friendly environment for consumers.

24.    What began as a single convenience store has rapidly grown into a national phenomenon, and has become "a must-stop, one-stop-shop" for consumers across the country.[1]  For many, Buc-ee's "has become the rare brand—like Apple and Costco—that inspires loyalty that goes well beyond rational consumer calculations."[2]

---

[1] Scottie Andrews, *Inside the Cult of Buc-ee's: How a Texas Gas Station Became the People's Pump,* CNNTravel (Oct. 1, 2023, 5:00 AM), https://www.cnn.com/2023/10/01/travel/bucees-gas-station-convenience-popularity-cec/index.html (copy attached hereto as **Exhibit A**).

[2] Eric Benson, *Buc-ee's: The Path to World Domination*, Texas Monthly (Mar. 2019), https://www.texasmonthly.com/news-politics/buc-ees-the-path-to-world-domination/ (copy attached hereto **Exhibit B**).

25.    The Buc-ee's brand has significantly expanded its geographic footprint over the years. There are currently more than 50 Buc-ee's establishments spanning across 12 states (Georgia, Florida, Alabama, Texas, Missouri, South Carolina, Tennessee, Kentucky, Colorado, Mississippi, Virginia, and Ohio), including three locations in the state of Georgia.

26.    Buc-ee's travel centers are supported by prolific billboard advertising beginning up to hundreds of miles away from a location and increasing in frequency as the location gets closer.

27.    Plaintiff's travel centers are famous for providing consumers with a unique roadside experience that features several widely acclaimed amenities, including Plaintiff's signature spacious restrooms – which are routinely ranked among America's cleanest – and its massive facilities and parking lots, which generally span over fifty thousand square feet and boast dozens of fueling positions. Plaintiff's large-scale convenience stores also offer a variety of flavorful Buc-ee's house-brand food items and an array of Buc-ee's-branded merchandise and souvenirs.

A.    **Buc-ee's Marks**

28.    Plaintiff has continuously used the mark "BUC-EE'S," both alone and in combination with certain other words and/or designs, in connection with

providing convenience store services, gas station services, and other related goods and services for over four decades.

29.    Plaintiff is the owner of common law trademark rights in and to the BUC-EE'S word mark in connection with its extensive array of goods and services, including, but not limited to, convenience store services and gas station services.

30.    Plaintiff also owns numerous federal trademark registrations for the BUC-EE'S word mark, including U.S. Registration Nos. 3,763,277; 4,007,063; and 4,973,184 (hereinafter collectively referred to as the "Buc-ee's Word  Marks"). Plaintiff's federal trademark registrations are valid, subsisting, and incontestable pursuant to 15 U.S.C. § 1065.

31.    The foregoing federal trademark registrations encompass the goods and services identified below:

| Mark | Registration No. & Date | Date of First Use in Commerce | Description of Services |
|---|---|---|---|
| BUC-EE'S | U.S. Registration No. 3,763,277 <br><br> Registration Date: March 23, 2010 | At least as early as July 1, 1982 | Int'l Class 35: Retail store services featuring convenience store items and gasoline |

| BUC-EE'S | U.S. Registration No. 4,007,063<br><br>Registration Date: August 2, 2011 | At least as early as August 2006 | Int'l Class 35: Retail store services featuring: metal goods, namely, metal keychains; electrical and scientific apparatus, namely, decorative magnets; printed stickers; wind chimes; housewares and glass, namely, drinking glasses, drinking mugs, insulated mugs, portable beverage coolers, bread boards; clothing, namely, shirts, pants, jackets, t-shirts, ball caps, pajamas, underwear, boxers, hats, cowboy hats; sporting goods; board games; balls for games; meats and processed foods, namely, prepared chicken, prepared pork, prepared beef, prepared turkey, banana chips, pickled vegetables, jellies, fruit preserves, fruit flavored butters, apple butter, cherry butter, pumpkin butter, sweet potato butter, peach butter, vegetable-flavored |
|---|---|---|---|

12

| | | | butters, nuts; snack foods, namely, nut-based snacks, trail mixes, candied nuts, roasted nuts, processed nuts, prepared nuts, dried-vegetables snack foods, snack food dips, food package combinations consisting primarily of meat and/or cheese, processed cheeses, pickled vegetables; staple foods, namely, confectionary, candy, candy with nuts, candied nuts, salsa |
|---|---|---|---|
| BUC-EE'S | U.S. Registration No. 4,973,184<br><br>Registration Date: June 7, 2016 | At least as early as August 1, 2006 | Int'l Class 4: Motor Fuel |

32.    In addition, Plaintiff has continuously used the below-referenced beaver logo, both alone and in combination with certain other words and/or designs (including in combination with the word "Buc-ee's"), in connection with its goods and services since the early 1980s.

 

33.    Plaintiff is the owner of common law trademark rights in and to the Buc-ee's beaver logo in connection with its extensive array of goods and services, including, but not limited to, convenience store services and gas station services.

34.    Plaintiff also owns several federal trademark registrations for the Buc-ee's logo (both in grayscale and in color), including U.S. Registration Nos. 4,007,064; 4,316,461; 4,973,077; 4,973,185; 6,421,517; 6,421,518; 7,419,559; 3,246,893; 8,113,899; and 8,113,900 (hereinafter collectively referred to as the "Buc-ee's Logo Marks" and, collectively with the Buc-ee's Word Marks, the "Buc-ee's Marks"). Plaintiff's federal trademark registrations are valid and subsisting, and several are incontestable pursuant to 15 U.S.C. § 1065.

35.    The foregoing federal trademark registrations encompass a broad range of goods and services offered by Plaintiff, including, but not limited to, the goods and services identified below:

| Mark | Registration No. & Date | Date of First Use in Commerce | Description of Services |
|---|---|---|---|
| | U.S. Registration No. 3,246,893<br><br>Registration Date: May 29, 2007 | At least as early as July 1, 1982 | Int'l Class 35: Retail store services featuring convenience store items and gasoline |
| | U.S. Registration No. 7,419,559<br><br>Registration Date: June 18, 2024 | At least as early as 1982 | Int'l Class 35: Retail store services featuring convenience store items and gasoline |
| | U.S. Registration No. 4,973,185<br><br>Registration Date: June 7, 2016 | At least as early as August 1, 2006 | Int'l Class 4: Motor Fuel |

36.    Plaintiff continues to preserve and maintain its rights with respect to the Buc-ee's Marks, including those registered with the United States Patent and Trademark Office (the "USPTO"), in connection with the broad range of goods and services offered thereunder.

37.    True and correct copies of the Registration Certificates for the federal trademark registrations identified herein are collectively attached hereto as **Exhibit C**.

38.    Due to Plaintiff's longstanding and exclusive use of the Buc-ee's Marks, the growth and success achieved under the Buc-ee's Marks, and the

substantial time, money, and effort Plaintiff has expended in promoting its goods and services under the Buc-ee's Marks, the Buc-ee's Marks have become, through favorable public acceptance and recognition, exclusive assets of significant value to Plaintiff as symbols of its goodwill and the quality of its products and services.

39.     The Buc-ee's Marks are inherently distinctive and serve to identify and indicate the source of Plaintiff's goods and services to the consuming public. As noted above, the Buc-ee's brand is used across more than 50 locations throughout the United States, *all of which* prominently display and utilize the Buc-ee's Marks to provide, advertise, and promote Plaintiff's offerings.

40.     As illustrated below, the Buc-ee's Marks appear on signs visible from the highway, above entrances to Plaintiff's stores, atop Plaintiff's fueling canopies, on signage inside of Plaintiff's stores, and on an array of Buc-ee's-branded merchandise and products sold at Plaintiff's stores.

  

16

 

41.     Buc-ee's also features its Marks in physical statue form, including by displaying a beaver statue in front of all of Buc-ee's travel centers.

 

42.     Due in large part to the substantial growth and success of Plaintiff's travel centers and brand, the Buc-ee's Marks have become a cherished icon by legions of patrons across the nation. Indeed, as a segment that aired on CBS News's nationally-syndicated Sunday Morning program on January 30, 2022, observed,

"[p]erhaps not since Mickey Mouse has a cartoon rodent captured the hearts . . . of so many[.]"[3]

43.    As a result of Plaintiff's prominent and extensive use and promotion of the Buc-ee's Marks, the trade and purchasing public have come to know and recognize the Buc-ee's Marks as a source-identifier for Plaintiff's offerings and the quality and consistency that consumers have come to expect from Plaintiff. Accordingly, Plaintiff's Buc-ee's Marks have developed and represent valuable goodwill which rightfully belongs exclusively to Plaintiff.

**B.    Defendants' Unlawful Infringement of the Buc-ee's Marks**

44.    Defendant Ahuja owns and operates Teddy's.

45.    Defendants Ahuja and Kapoor own several other LLCs that do business as convenience stores under the "Teddy's" name, including 149 TM; 3010 TM; and 3843 TM (collectively the "Operating Entities").

46.    Each operating entity was established to operate a Teddy's convenience store location.

---

[3] Chad Cardin, *Welcome to Buc-ee's*, CBS News Sunday Morning (Jan. 30, 2022, 9:21 AM), https://www.cbs.com/shows/video/4h1v0RiVwHG0hx05a0VXIk_KAz84YrQc/.

47.   149 TM is the operating entity for the Teddy's convenience store located at 149 Prominence Ct, Canton, Georgia. This store opened in or around November 2024.

48.   3010 TM is the operating entity for the Teddy's convenience store located at 3010 Ball Ground Hwy, Ball Ground, Georgia. This store opened in or around January 2025.

49.   Recently, Buc-ee's learned that Ahuja and Kapoor plan to open a third Teddy's store. On March 10, 2026, Defendant Ahuja testified in a pending United States Patent and Trademark Office matter admitting that (1) land has already been leased for a third Teddy's location and (2) an LLC has already been formed to operate that location. (Deposition of K. Ahuja, attached as **Exhibit D**, at 200:9–22.)

50.   Ahuja and Kapoor formed 3843 TM, which will be the operating entity for the Teddy's convenience store they are planning to open at 3843 Glenwood Rd, Decatur, Georgia.

51.   The land the Operating Entities' stores sit on is owned or leased by three separate LLCs that are also owned by Defendants Ahuja and Kapoor, including 149

Prominence; Ballground TM; and 3843 Glenwood RE (collectively the "Property-Owning Entities").

52.    Each property-owning entity owns or leases the land for one of the Teddy's convenience store locations.

53.    149 Prominence is the property-owning entity for the Teddy's convenience store operated by 149 TM and located at 149 Prominence Ct, Canton, Georgia.

54.    Ballground TM is the property-owning entity for the Teddy's convenience store operated by 3010 TM and located at 3010 Ball Ground Hwy, Ball Ground, Georgia.

55.    Defendants Ahuja and Kapoor already leased the land for their third store under their company 3843 Glenwood RE, making it the property-owning entity for the Teddy's convenience store that will be operated by 3843 TM and located at 3843 Glenwood Rd, Decatur, Georgia.

56.    Defendants are using a brand identity composed of the name "Teddy's" paired with an anthropomorphic animal mascot depicted through a recurring logo, in-store renderings, and even a store-entrance statue (the "Infringing Brand Identity") in connection with their convenience store and retail services, which services are identical to the services offered by Plaintiff under the Buc-ee's Marks.

20

57. All Defendants have knowledge of the use of the Infringing Brand Identity, components of which appear at both of the current Teddy's convenience store locations and will appear at the third, planned Teddy's location. Each of the Operating Entities uses or is planning to use components of the Infringing Brand Identity, and each of the Property-Owning Entities knows about and facilitates the use of the Infringing Brand Identity on its property. As the co-owners of each of these LLCs, Defendants Ahuja and Kapoor have helped facilitate the LLCs' infringement. Defendant Ahuja, as the sole owner of Teddy's, was also intimately involved in the creation and development of the Infringing Brand Identity.

58. As shown below, the Infringing Brand Identity featured at Teddy's stores contains prominent depictions of an anthropomorphic animal mascot through a recurring logo and in-store renderings.







59.    As shown below, the Infringing Brand Identity featured at at least one of Teddy's store features a depiction of an anthropomorphic animal mascot through a store-entrance statue.[4]



---

[4] The Popcorn Lady (Mar. 10, 2025), Facebook, https://www.facebook.com/reel/1389984572003083.

60.    Similarly, the Infringing Brand Identity featured at Teddy's stores uses the "Teddy's Market" name, which contributes to the infringement because of "TEDDY'S" (the dominant portion of the name) similarity to "BUC-EE'S."

61.    Defendants' use of the Infringing Brand Identity is likely to cause confusion among consumers in the relevant market as to the source and origin of Teddy's services. As illustrated above, the Infringing Brand Identity prominently features an anthropomorphic and cartoon representation of a smiling animal that closely resembles a beaver, wearing a hat, with white specular highlights on its eyes, with a solid black nose with a single white specular highlight, showing a glimpse of a red/pink tongue, and with lighter coloration around its mouth, in at least some examples being encased in a contrasting geometric shape.

62.    According to public records maintained by the USPTO, on May 28, 2024, Teddy's and/or its officers or affiliates, filed service mark Application Serial No. 98571297, for the design mark depicted below, identifying "[r]etail store services featuring convenience store items and gasoline" in International Class 35 (the "Class 35 Services").



63.    That same day, Teddy's and/or its officers or affiliates, filed service mark Application Serial No. 98571418, for the composite mark depicted below, identifying the Class 35 Services.



64.    That same day, Teddy's and/or its officers or affiliates, filed service mark Application Serial No. 98571460, for the composite mark depicted below, identifying the Class 35 Services.



65.     That same day, Teddy's and/or its officers or affiliates, filed service mark Application Serial No. 98571377, for the standard character mark TEDDY'S MARKET, identifying the Class 35 Services.

66.     Plaintiff believes the Infringing Brand Identity has been in use since approximately November 2024, when the first Teddy's store was opened.

67.     The inspiration for the Infringing Brand Identity was created by Defendant Ahuja, and closely resembles the Buc-ee's Marks:



68.     There is no evidence indicating that Defendants used any components of the Infringing Brand Identity prior to the dates on which Plaintiff began using the Buc-ee's Marks in connection with its goods and services.

69.     Accordingly, Plaintiff has, and continues to have, exclusive priority and rights over Defendants in and to the Buc-ee's Marks, and variants thereof, in connection with the relevant services.

70.    As noted above, Defendants' use of the Infringing Brand Identity is likely to cause (to the extent it has not already caused) confusion, mistake, and/or deception among consumers in the relevant market as to the source, affiliation, and/or origin of Teddy's goods and services.

71.    In addition, the Infringing Brand Identity is likely to cause consumers to associate Teddy's with Buc-ee's, thereby blurring the distinctiveness of the famous Buc-ee's Marks.

72.    The Infringing Brand Identity mimics the salient portions of Plaintiff's famous Buc-ee's Marks, including with respect to, at least, the following elements:

a.    both logos are vector-style mascot illustrations with a cartoonish design aesthetic;

b.    both characters are arbitrarily wearing hats;

c.    both characters have white specular highlights on their eyes;

d.    both characters have a solid black nose with a single white specular highlight;

e.    both characters show a glimpse of a red/pink tongue;

f.    both characters have lighter coloration around their mouths;

g.    both logos have black outlines of the characters and black outlines of the geometric shapes; and

27

h. both logos featuring a contrasting geometric shape encasing the character, with Teddy's logo using a red color similar to the red color within the Buc-ee's logo;

i. "Teddy's" (which is the dominant portion of the "Teddy's Market" name) has similarities to the "Buc-ee's" name including that both names (1) are two-syllable words beginning with a hard consonant sound, (2) have a second hard consonant sound separating the syllables, (3) have a repeated letter ("dd" in "Teddy's" and "ee" in "Buc-ee's"), (4) end with an "eez" sound, (5) are in possessive form, and (6) consist of six letters.

73. Further, the services offered under the Infringing Brand Identity are identical to those offered under Plaintiff's Buc-ee's Marks, which significantly increases the likelihood of consumer confusion and dilution caused by Defendants' use of the Infringing Brand Identity.

74. The likelihood of confusion and dilution caused by Defendants' unauthorized use of the Infringing Brand Identity is further amplified by the fact that Defendants are using the Infringing Brand Identity in the same geographic areas in which Plaintiff operates in Georgia.

75.     Buc-ee's currently operates three stores in Georgia: in or around Calhoun, Warner Robbins, and Brunswick.

76.     The first two Teddy's locations were opened within close proximity of the Buc-ee's Calhoun location. The third Teddy's location is planned to open along the same highway route on which all three Buc-ee's stores are situated.

77.     The likelihood of consumer confusion and dilution created by Defendants' use of the Infringing Brand Identity is further exacerbated by the circumstances in which the Teddy's logo is encountered by consumers. As set forth herein, Defendants are using the Infringing Brand Identity in connection with providing convenience store services at a gas station, including on the outside of the store. Accordingly, the vast majority of consumers encountering Teddy's infringing logo will consist of drivers who are actively operating motor vehicles and are thus incapable of providing anything beyond a brief glance at the infringing logo, which is displayed outside and inside of Defendants' stores.

78.     As if these circumstances were not problematic enough, consumers viewing Teddy's infringing logo from their vehicles will generally be required to do so from a distance, which further limits their ability to meaningfully assess the Infringing Brand Identity before reaching an initial conclusion as to their source or

affiliation. In particular, the positioning of Teddy's infringing logo on the outside of the store further promotes this confusion.

79.     Rather, any meaningful assessment of the Infringing Brand Identity can generally occur *only after* the consumer has turned into Defendants' facilities and is able to view the Infringing Brand Identity more closely and from a stationary position – at which point it would be highly unlikely for consumers to change their purchasing decisions or seek out a different source for the relevant services. Thus, even if, upon closer inspection, a consumer was able to conclude that the Infringing Brand Identity is not actually associated with Plaintiff, the injury and loss of business caused by Defendants' use of the Infringing Brand Identity will have already been sustained.

80.     Plaintiff believes Defendants committed these infringing acts with prior knowledge of Plaintiff's Buc-ee's Marks, particularly given the substantial fame and popularity the Buc-ee's Marks have generated in the State of Georgia.

81.     For example, Buc-ee's has become so popular in the state of Georgia that "members of the Georgia House of Representatives declared March 20

'Buc-ee's Day,' in honor of the popular, and lucrative, beaver-themed gas station, food stop and pop culture standout."[5]

82. Plaintiff has no control over the nature, quality, or pricing of Defendants' services, promotional activities, or any other aspect of Defendants' business operations. Defendants' unlawful infringement of Plaintiff's widely recognized Buc-ee's Marks falsely denotes its association with Defendants' services, and places Plaintiff's hard-earned reputation behind a business and services over which it has no affiliation or control.

83. Plaintiff believes Defendants have adopted and are using the confusingly similar Infringing Brand Identity in a deliberate attempt to exploit and capitalize on the goodwill and success Plaintiff has achieved under the Buc-ee's Marks and brand.

84. As outlined above, Defendants' use of the Infringing Brand Identity in connection with directly-competing gas station convenience store services in an overlapping geographic area  is likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that Defendants' goods and services are

---

[5] Sam Sachs, *Georgia lawmakers recognize March 20 as 'Buc-ee's Day' at state Capitol*, WSBTV (Mar. 20, 2025, 3:26 PM), https://www.wsbtv.com/news/local/atlanta/georgia-lawmakers-recognize-march-20-buc-ees-day-state-capitol/FX4HZ75EGJF4HHVABYL53RKQ5E/ (copy attached hereto as **Exhibit E**).

authorized by, associated with, sponsored by, and/or endorsed by Buc-ee's when, in fact, they are not. All of these actions are intentional and meant to infringe on and dilute the overall Buc-ee's brand identity.

85.    The likelihood of confusion, mistake, and deception and the blurring of the distinctiveness of the famous Buc-ee's Marks brought about by Defendants' misappropriation of Plaintiff's Buc-ee's Marks causes irreparable harm to the goodwill symbolized by and distinctiveness of the Buc-ee's Marks and brand and the hard-earned reputation for quality the Buc-ee's Marks embody, for which there is no adequate legal remedy.

<u>COUNT I</u>
**FEDERAL TRADEMARK INFRINGEMENT**
**(15 U.S.C. § 1114)**
**(All Defendants)**

86.    Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

87.    Plaintiff markets, advertises, and provides convenience store and gas station services and other related goods and services under the Buc-ee's Marks and uses the Buc-ee's Marks to distinguish its goods and services from those of others in the relevant marketplace.

88.     As a result of Plaintiff's longstanding, continuous, and prominent use of the Buc-ee's Marks in connection with its goods and services, the purchasing public has come to recognize the Buc-ee's Marks as designations identifying Plaintiff as the source of its offerings.  Accordingly, Plaintiff's Buc-ee's Marks have developed and represent the valuable goodwill and reputation of Plaintiff, which rightfully belongs exclusively to Plaintiff.

89.     As described herein, Plaintiff is the owner of several federal trademark registrations for the Buc-ee's Marks, including U.S. Registration Nos. 3,246,893 and 7,419,559, which are registered in connection with "[r]etail store services featuring convenience store items and gasoline," in International Class 35, and U.S. Registration No. 4,973,185, which is registered in connection with "[m]otor fuel," in International Class 4.

90.     Defendants have infringed Plaintiff's federally registered Buc-ee's Marks in interstate commerce by various acts, including, without limitation, by marketing, advertising, offering for sale, and/or providing retail store services featuring convenience store items and other related goods and services under the Infringing Brand Identity, the components of which are confusingly similar to Plaintiff's federally registered Buc-ee's Marks and the combination of which is confusingly similar to Plaintiff's iconic brand identity.

91.    Defendants' use of the Infringing Brand Identity in conjunction with providing retail store services featuring convenience store items and other related goods and services is without Plaintiff's permission or authority and is likely to cause confusion, mistake, and/or deception among the purchasing public, and also constitutes initial interest confusion.

92.    Defendants' use of the Infringing Brand Identity has been made notwithstanding Plaintiff's well-known and prior established rights in the Buc-ee's Marks and with actual notice and constructive notice of Plaintiff's federal registration rights under 15 U.S.C. § 1072.

93.    Defendants' conduct constitutes infringement of Plaintiff's federally registered Buc-ee's Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

94.    Plaintiff has been damaged as a result of Defendants' infringement of the Buc-ee's Marks. Plaintiff alleges that Defendants' provision of services under the confusingly similar Infringing Brand Identity has resulted in loss of sales to Plaintiff, has reduced the business and profits of Plaintiff, and has injured the general reputation of Plaintiff, all to Plaintiff's damage in an amount not yet ascertainable, but that will be determined during this action.

95. Plaintiff alleges that Defendants have derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but that will be determined during this action.

96. Plaintiff alleges that Defendants acted intentionally and/or willfully in infringing upon the Buc-ee's Marks, with knowledge of Plaintiff's exclusive rights in and to the Buc-ee's Marks, and with knowledge that Defendants' use of the confusingly similar Infringing Brand Identity in connection with the relevant services was unauthorized and was, in fact, infringing.

97. As a result of Defendants' wrongful conduct, Plaintiff is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney's fees pursuant to 15 U.S.C. § 1117(a) and (b). Alternatively, Plaintiff is entitled to statutory damages under 15 U.S.C. § 1117(c).

98. Defendants' infringing activities complained of herein have caused and, unless enjoined by this Court, will continue to cause irreparable injury and other damage to Plaintiff's business, reputation, and goodwill in the federally registered Buc-ee's Marks, for which Plaintiff has no adequate remedy at law.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT AND
## UNFAIR COMPETITION
## (15 U.S.C. § 1125(a))
## (All Defendants)

99.    Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

100.    Defendants have infringed Plaintiff's Buc-ee's Marks in interstate commerce by various acts, including, without limitation, by marketing, advertising, offering for sale, and/or providing retail store services featuring convenience store items and other related goods and services under the Infringing Brand Identity, the components of which are confusingly similar to Plaintiff's Buc-ee's Marks and the combination of which is confusingly similar to Plaintiff's iconic brand identity.

101.    Defendants' improper and unauthorized use of, and provision of services under, marks and other trade dress confusingly similar to Plaintiff's Buc-ee's Marks and brand identity, is likely to cause confusion, mistake, and/or deception among consumers in the relevant marketplace and constitutes infringement of Plaintiff's trademark rights in violation of the Lanham Act, including Section 43 of the Act, which prohibits the use of a trademark in such a manner as is likely to cause confusion as to the source of the goods and/or services bearing the trademark. *See* 15 U.S.C. § 1125.

102. Defendants intend to sell, and are selling, their services under the Infringing Brand Identity, and will continue to do so unless enjoined by this Court. Plaintiff has no adequate remedy at law for Defendants' infringement of Plaintiff's Buc-ee's Marks, in that: (i) the Buc-ee's Marks are unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) the injuries to Plaintiff resulting from Defendants' infringement are not precisely and fully ascertainable; (iii) Defendants' infringement injures and threatens to continue to injure Plaintiff's reputation and goodwill; and (iv) the injury resulting to Plaintiff from Defendants' unlawful acts complained of herein is continuing, and will cause irreparable injury to Plaintiff and to the public. Further, the balance of hardships weighs in Plaintiff's favor as Defendants are the infringing party, Defendants deliberately selected the Infringing Brand Identity and are choosing to engage in the infringing activities complained of herein, and Defendants' costs would be minimal, as it can continue operating their businesses under any other alternative branding, that does not infringe upon that owned by Plaintiff. Further, the public interest is served by enjoining the improper use of trademarks and making such use unprofitable. Accordingly, Plaintiff is entitled to an order from this Court permanently enjoining Defendants and their principals, agents, employees, and others acting in concert with them, from directly or indirectly infringing Plaintiff's

Buc-ee's Marks in any manner, including by using the Buc-ee's Marks or any other branding that is confusingly similar to the Buc-ee's Marks and brand identity in connection with the sale, offer for sale, advertising, or promotion of any goods or services.

103.   Additionally, or in the alternative, Plaintiff seeks an accounting of its actual and consequential damages resulting from Defendants' infringing acts. Moreover, as a result of Defendants' egregious infringement, Plaintiff seeks treble, additional, and enhanced damages from Defendants.

## COUNT III
## TRADEMARK INFRINGEMENT UNDER GEORGIA LAW
### (All Defendants)

104.   Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

105.   Defendants' aforesaid acts constitute trademark infringement under Georgia law.

106.   Buc-ee's had prior rights to the Buc-ee's Marks, and Buc-ee's was and is a bona fide user of Buc-ee's Marks, which were used and well known throughout Georgia.

107. As a result of Defendants' infringement and unfair competition, Plaintiff has suffered and will continue to suffer injury and damage in an amount yet to be determined.

108. Unless Defendants' unlawful acts are enjoined by this Court, they will continue to cause irreparable injury to Plaintiff and to the public, for which there is no adequate remedy at law.

109. Accordingly, Plaintiff is entitled to an order from this Court permanently enjoining Defendants and their principals, agents, employees, and others acting in concert with them, from directly or indirectly infringing Plaintiff's Buc-ee's Marks in any manner, including by using the Buc-ee's Marks or any other branding that is confusingly similar to the Buc-ee's Marks in connection with the sale, offer for sale, advertising, or promotion of any goods or services in Georgia.

110. Additionally, or in the alternative, Plaintiff seeks an accounting of its actual and consequential damages resulting from Defendants' infringing acts. Moreover, as a result of Defendants' egregious infringement, Plaintiff seeks additional and enhanced damages from Defendants.

## COUNT IV
### UNFAIR COMPETITION UNDER GEORGIA LAW
### (All Defendants)

111. Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

112. Defendants have unfairly and intentionally used the Infringing Brand Identity to misrepresent their brand as that of Buc-ee's.

113. Defendants have engaged in such unfair and improper conduct to trade off of, and benefit from, Plaintiff's reputation and goodwill in the Buc-ee's Marks.

114. Defendants have derived, and continue to derive, unfair and illicit profits by trading off of the reputation and goodwill of the Buc-ee's Marks.

115. Through Defendants' use of the Infringing Brand Identity, Plaintiff has lost sales and profits. Defendants have also harmed Plaintiff's brands, goodwill, and reputation.

116. The acts described above constitute unfair competition under Georgia law.

117. Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

118. Defendants' conduct is oppressive, fraudulent, and malicious, entitling Plaintiff to an award of punitive damages.

## COUNT V
## UNJUST ENRICHMENT UNDER GEORGIA LAW
### (All Defendants)

119.   Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

120.   As a result of Defendants' infringing and unauthorized use of the Infringing Brand Identity, Defendants have obtained a benefit to which they are not entitled.

121.   Defendants' unlawful acts of infringement and unfair competition have resulted in profits and unjust enrichment to Defendants in an amount yet to be determined.

122.   Defendants are thus liable to Plaintiff for unjust enrichment under Georgia common law.

## COUNT VI
## VIOLATION OF GEORGIA UNIFORM DECEPTIVE
## TRADE PRACTICES ACT
### (O.C.G.A. §§ 10-1-370 to 10-1-375)
### (All Defendants)

123.   Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

124. Defendants' aforesaid acts constitute deceptive trade practices in violation of the Georgia Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370 to 10-1-375.

125. Defendants have willfully engaged in the aforesaid acts knowing those acts to be deceptive.

126. Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff. Among other things, Defendants' actions have caused and are continuing to cause monetary harm, as well as harm to Plaintiff's brands, goodwill, and reputation.

127. As a result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

<u>**COUNT VII**</u>
**TRADEMARK DILUTION UNDER GEORGIA LAW**
**(O.C.G.A. § 10-1-451)**
**(All Defendants)**

128. Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

129.   Plaintiff's Buc-ee's Marks are widely recognized by the public in and throughout the Georgia as designations of source of the goods and services offered by Plaintiff.

130.   As a result of Plaintiff's longstanding, continuous, and extensive use of the Buc-ee's Marks in the State of Georgia, the Buc-ee's Marks are famous, including among consumers in Georgia, and were famous before Defendants commenced their unlawful conduct described herein.

131.   Defendants' conduct, as described herein, is a willful attempt to dilute the distinctive quality and exclusivity of the Buc-ee's Marks and to trade on the goodwill and reputation of the Buc-ee's Marks.

132.   Defendants' aforesaid acts constitute trademark dilution in violation of the Georgia Antidilution Act, O.C.G.A. § 10-1-451.

133.   As a result of Defendants' dilution of Plaintiff's distinctive Buc-ee's Marks, Plaintiff has suffered, and is suffering, injury and damage to which there is no adequate remedy at law. Plaintiff therefore seeks permanent injunctive relief to prevent this type of injury from continuing. Additionally, or in the alternative, Plaintiff seeks an accounting and damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby respectfully requests the following relief against Defendants, as follows:

(a)    Entry of judgment in favor of Plaintiff and against Defendants on all claims asserted herein;

(b)    Entry of judgment determining that Defendants have infringed Plaintiff's federal and Georgia trademark rights in the Buc-ee's Marks;

(c)    Entry of judgment determining that Defendants have diluted the goodwill associated with Plaintiff's Buc-ee's Marks;

(d)    Entry of judgment determining that Defendants have engaged in unfair competition in violation of both federal and Georgia common law;

(e)    An award of Defendants' profits and Plaintiff's damages for trademark infringement under 15 U.S.C. §§ 1114 and 1117, trebled, in an amount to be proven at trial;

(f)    An award of Defendants' profits and Plaintiff's damages for unfair competition under 15 U.S.C. §1125(a), trebled, in an amount to be proven at trial;

(g)    A preliminary and permanent injunction by this Court prohibiting Defendants, and their respective agents, employees, and representatives and all persons in active concert and participation with them from: (1) engaging or

continuing to engage in the infringing, unlawful, unfair, or fraudulent business acts or practices described herein; (2) using without permission any mark or other intellectual property right of Plaintiff; (3) acting to infringe the Buc-ee's Marks; (4) acting in any other manner to derogate Plaintiff's intellectual property rights; and (5) requiring Defendants to file with this Court and to serve upon Plaintiff, within thirty days after the service on Defendants of the injunction, or such extended period as this Court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

(h)     An Order requiring that Defendants provide a complete accounting and for equitable relief, including that Defendants disgorge and return or pay Plaintiff their ill-gotten gains obtained from the infringing or otherwise unlawful activities complained of herein and/or to pay restitution;

(i)     An Order that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiff;

(j)     Pursuant to 15 U.S.C. § 1118, an Order requiring that Defendants and all others acting under Defendants' authority, at their cost, be required to deliver up to Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, marketing materials, and other material in their possession, custody, or

control bearing the Infringing Brand Identity in any manner or any other mark that is confusingly similar to Plaintiff's Buc-ee's Marks;

(k) An order directing the USPTO to refuse registration of U.S. Application Serial Nos. 98571297, 98571377, 98571418, and 98571460.

(l) That this Court award Plaintiff all damages caused by the acts of Defendants and all profits of Defendants from the acts complained of herein and/or all costs to Plaintiff caused by Defendants' activities complained of herein;

(m) Trebling of damages and profits awarded to Plaintiff as authorized by law;

(n) That this Court award Plaintiff pre-judgment and post-judgment interest;

(o) That this Court award Plaintiff its reasonable attorney's fees and costs; and

(p) That this Court award Plaintiff such other and further relief, at law or in equity, as the Court may deem just and equitable.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all claims and issues so triable.

Dated:  May 1, 2026                    Respectfully submitted,

                                            **GREENBERG TRAURIG, LLP**

                                            */s/ Jake Evans*
                                            Jake Evans
                                            Georgia Bar No. 797018
                                            Terminus 200
                                            3333 Piedmont Road NE, Suite 2500
                                            Atlanta, Georgia 30305
                                            P: (678) 553-2100
                                            F: (678) 553-2212
                                            Jake.Evans@gtlaw.com

                                            **COUNSEL FOR BUC-EE'S, LTD.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **BUC-EE'S, LTD.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| **TEDDY'S MARKET, LLC; 149** | § | **CIVIL ACTION NO. _____** |
| **TM, LLC; 149 PROMINENCE,** | § | |
| **LLC; 3010 TM, LLC;** | § | |
| **BALLGROUND TM, LLC; 3843** | § | **JURY TRIAL DEMANDED** |
| **TM, LLC; 3843 GLENWOOD RE,** | § | |
| **LLC; KARAN AHUJA; and** | § | |
| **MICKEY KAPOOR,** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## VERIFICATION

Before me, the undersigned officer, authorized to administer oaths, appeared Joe O'Leary, who after being duly sworn on oath, stated that the facts contained in the foregoing VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF, are true and correct.

This 30th day of April, 2026.

_____

1

Sworn before me on this
the ⎯30⎯ day of ⎯April⎯⎯⎯⎯⎯⎯⎯⎯⎯, 2026.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Notary Public

My Commission Expires: ⎯12-01. 2029⎯⎯⎯

2