IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| BUC-EE'S, LTD.,<br><br>    *Plaintiff*,<br><br>    v.<br><br>TEDDY'S MARKET, LLC; 149 TM, LLC;<br>149 PROMINENCE, LLC; 3010 TM, LLC;<br>BALLGROUND TM, LLC; 3843 TM, LLC;<br>3843 GLENWOOD RE, LLC;<br>KARAN AHUJA; and MICKEY KAPOOR,<br><br>    *Defendants*. | CIVIL ACTION FILE<br><br>NO. 1:26-cv-02478-VMC<br><br>JURY TRIAL DEMANDED |

## DEFENDANTS' ANSWER, DEFENSES, AND COUNTERCLAIMS

All defendants hereby submit their Answer, Defenses, and Counterclaims in response to the [14] First Amended Complaint ("FAC") as follows:

## PARTIES

1.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

2.     Defendants admit that Defendant Teddy's Market, LLC ("Teddy's Market") is a Georgia limited liability company which previously had a registered principal office address at 3596 Old Milton Pkwy, Alpharetta, GA  30005, that it

has already acknowledged service of process in this action, and that Teddy's Market is the applicant of record for the United States Trademark Applications identified in paragraphs 48-51 of the FAC: Except as thus stated, the allegations in this paragraph are denied.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

## JURISDICTION AND VENUE

11. Defendants admit that this Court has subject matter jurisdiction over this action. Except as thus stated, the allegations in this paragraph are denied.

12. Defendants admit that this court has personal jurisdiction over Defendant Teddy's Market in this matter. Except as thus stated, the allegations in this paragraph are denied.

2

13.   Defendants admit that this court has personal jurisdiction over Defendant 149 TM, LLC, in this matter.  Except as thus stated, the allegations in this paragraph are denied.

14.   Defendants admit that this court has personal jurisdiction over Defendant 149 Prominence, LLC, in this matter.  Except as thus stated, the allegations in this paragraph are denied.

15.   Defendants admit that this court has personal jurisdiction over Defendant 3010 TM, LLC, in this matter.  Except as thus stated, the allegations in this paragraph are denied.

16.   Defendants admit that this court has personal jurisdiction over Defendant Ballground TM, LLC, in this matter.  Except as thus stated, the allegations in this paragraph are denied.

17.   Defendants admit that this court has personal jurisdiction over Defendant 3843 TM, LLC, in this matter.  Except as thus stated, the allegations in this paragraph are denied.

18.   Defendants admit that this court has personal jurisdiction over Defendant 3843 Glenwood RE, LLC, in this matter.  Except as thus stated, the allegations in this paragraph are denied.

19.   Admitted.

20.   Admitted.

21. Defendants admit that venue is proper in this Court. Except as thus stated, the allegations in this paragraph are denied.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

22. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

23. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

24. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

25. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

26. Admitted, on information and belief.

27. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

28. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

29. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

30. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

31. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

32. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

33. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

34. Defendants expressly deny that Plaintiff's alleged federal trademark registrations are valid or enforceable. Defendants lack knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and the same are therefore denied.

35. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

36. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

37. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

38. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

39. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

40. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

41. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

42. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

43. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

44. Defendants admit that "Teddy's Market" is a standard-sized convenience store currently operating at two locations – one in Canton, Georgia, and the other in Ball Ground, Georgia – and that each location operates under the "Teddy's Market" name paired with a logo featuring a cartoon teddy bear. Defendants admit that there is a carved bear made by a customer (on his own initiative) located inside the "Teddy's Market" store in Ball Ground.  Except as thus stated, the allegations in this paragraph are denied.

45. Denied.

46. Denied.

47. Denied.

48.     Defendants admit that on May 28, 2024, Defendant Teddy's Market filed service mark application serial number 98571297 for the design mark depicted below in international class 35 for "Retail store services featuring convenience store items and gasoline."



Except as thus stated, the allegations in this paragraph are denied.

49.     Defendants admit that on May 28, 2024, Defendant Teddy's Market filed service mark application serial number 98571418 for the design mark depicted below in international class 35 for "Retail store services featuring convenience store items and gasoline."



Except as thus stated, the allegations in this paragraph are denied.

50.     Defendants admit that on May 28, 2024, Defendant Teddy's Market filed service mark application serial number 98571460 for the design mark

depicted below in international class 35 for "Retail store services featuring convenience store items and gasoline."



Except as thus stated, the allegations in this paragraph are denied.

51.    Defendants admit that on May 28, 2024, Defendant Teddy's Market filed service mark application serial number 98571377 for the word mark TEDDY'S MARKET in international class 35 for "Retail store services featuring convenience store items and gasoline."  Except as thus stated, the allegations in this paragraph are denied.

52.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

53.    Denied.

54.    Denied.

55.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

56.    Denied.

57.    Defendants admit that Defendant Ahuja is the sole member and owner of Defendant Teddy's Market LLC.  Except as thus stated, the allegations in this paragraph are denied.

58.    Defendants admit that Defendants Ahuja and Kapoor are both members and owners of Defendants 149 TM and 3010 TM, which operate the "Teddy's Market" locations in Canton, Georgia, and Ball Ground, Georgia, respectively.  Except as thus stated, the allegations in this paragraph are denied.

59.    Defendants admit that Defendants 149 TM and 3010 TM were established to operate the "Teddy's Market" locations in Canton, Georgia, and Ball Ground, Georgia, respectively.  Except as thus stated, the allegations in this paragraph are denied.

60.    Defendants admit that 149 TM operates the "Teddy's Market" location at 149 Prominence Ct, Canton, Georgia, which opened in or around November 2024.  Except as thus stated, the allegations in this paragraph are denied.

61.    Defendants admit that 3010 TM operates the "Teddy's Market" location at 3010 Ball Ground Hwy, Ball Ground, Georgia, which opened in or around February 2025.  Except as thus stated, the allegations in this paragraph are denied.

62.    Defendants admit that 149 TM and 3010 TM actively operate "Teddy's Market" convenience stores and provide retail convenience store services under the "Teddy's Market" name and using the Teddy's Market logos and characters.  Except as thus stated, the allegations in this paragraph are denied.

63.    Defendants admit that Defendant Ahuja testified on March 10, 2026, during a deposition taken in Plaintiff's opposition proceedings challenging Teddy's Market's trademark applications (a) that a location has been leased to open one additional "Teddy's Market" location off Glenwood Road in Decatur, Georgia, but that location will only use the name, "Teddy's Market," and will not use any of the "Teddy's Market" characters or logos, and (b) that 3843 TM has been formed as an LLC.  (Excerpts of Dep. of K Ahuja, attached as Exhibit A, 198:21-199:22.) Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph concerning when Plaintiff leaned about the possibility of a third "Teddy's Market" store, and all such allegations are therefore denied.  Except as thus stated, the allegations in this paragraph are denied.

64.    Defendants admit that 3843 TM is an existing LLC that is actively preparing to operate the future "Teddy's Market" location at 3843 Glenwood Rd, Decatur, Georgia.  Except as thus stated, the allegations in this paragraph are denied.

65.    Defendants admit that Defendant Ahuja testified that the convenience store to be operated by 3843 TM will "say Teddy's Market outside.  No characters."  Except as thus stated, the allegations in this paragraph are denied.

66.    Defendants admit that Defendants Ahuja and Kapoor own 149 Prominence, Ballground TM, and 3843 Glenwood RE, which entities own or lease the land on which the two existing and one potential future "Teddy's Market" stores sit or are planned to sit.  Except as thus stated, the allegations in this paragraph are denied.

67.    Defendants admit that Defendants 149 Prominence and Ballground TM own or lease the land on which the two existing "Teddy's Market" stores sit. Except as thus stated, the allegations in this paragraph are denied.

68.    Denied.

69.    Defendants admit that Defendants Ahuja and Kapoor own Defendants 149 Prominence, Ballground TM, and 3843 Glenwood RE, and that they also own Defendants and 149 TM, 3010, TM, and 3843 TM.  Defendants admit that there is a carved bear made by a customer (on his own initiative) located inside the "Teddy's Market" store in Ball Ground.  Except as thus stated, the allegations in this paragraph are denied.

70.    Denied.

71.    Denied.

72.     Defendants admit that 149 Prominence owns the property located at 149 Prominence Ct, Canton, Georgia, where the "Teddy's Market" store operated by 149 TM is located.  Except as thus stated, the allegations in this paragraph are denied.

73.     Defendants admit that Ball Ground TM owns the property located at 3010 Ball Ground Hwy, Ball Ground, Georgia, where the "Teddy's Market" store operated by 3010 TM is located.  Except as thus stated, the allegations in this paragraph are denied.

74.     Denied.

75.     Defendants admit that 3843 TM has leased the land located at 3843 Glenwood Rd, Decatur, Georgia where the "Teddy's Market" store to be operated by 3843 TM is intended to be located.  Except as thus stated, the allegations in this paragraph are denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

13

83. Defendants admit that the services offered by "Teddy's Market" stores overlap with some of the many services offered by Plaintiff, and that some of Plaintiff's registered trademarks include, among many other listed goods and services, descriptions (as often mandated by the USPTO) similar or identical to the services listed under the same class of goods in Teddy's Market's pending trademark applications. Except as thus stated, the allegations in this paragraph are denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Defendants admit that Plaintiff has no control over the nature, quality, or pricing of Defendants' services, promotional activities, or any other aspect of Defendants' business operations. Except as thus stated, the allegations in this paragraph are denied.

92. Denied.

## COUNT I – FEDERAL TRADEMARK INFRINGEMENT

93. Defendants incorporate by reference their responses to paragraphs 22-92, above, as if set forth verbatim herein.

94. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

95. Denied.

96. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

97. Denied.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

102. Denied.

103. Denied.

104. Denied.

105. Denied.

106. Denied.

## COUNT II – FEDERAL UNFAIR COMPETITION

107.    Defendants incorporate by reference their responses to paragraphs 22-92, above, as if set forth verbatim herein.

108.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and the same are therefore denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.

114.    Denied.

115.    Denied.

116.    Denied.

117.    Denied.

## COUNT III – TRADEMARK INFRINGEMENT – GEORGIA LAW

118.    Defendants incorporate by reference their responses to paragraphs 22-92, above, as if set forth verbatim herein.

119.    Denied.

120.    Denied.

121.   Denied.

122.   Denied.

123.   Denied.

124.   Denied.

125.   Denied.

126.   Denied.

127.   Denied.

128.   Denied.

## COUNT IV – UNFAIR COMPETITION – GEORGIA LAW

129.   Defendants incorporate by reference their responses to paragraphs 22-92, above, as if set forth verbatim herein.

130.   Denied.

131.   Denied.

132.   Denied.

133.   Denied.

134.   Denied.

135.   Denied.

136.   Denied.

137.   Denied.

138.   Denied.

## COUNT V – UNJUST ENRICHMENT – GEORGIA LAW

139.    Defendants incorporate by reference their responses to paragraphs 22-92, above, as if set forth verbatim herein.

140.    Denied.

141.    Denied.

142.    Denied.

143.    Denied.

## COUNT VI – GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT

144.    Defendants incorporate by reference their responses to paragraphs 22-92, above, as if set forth verbatim herein.

145.    Denied.

146.    Denied.

147.    Denied.

148.    Denied.

149.    Denied.

150.    Defendants deny each and every other allegation in the First Amended Complaint not expressly admitted herein.

### RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any of the relief it seeks in its prayer for relief.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The complaint fails to state a claim upon which relief can be granted at least because (a) no reasonable consumer could possibly be confused between Plaintiff's alleged trademarks and Defendants' businesses, taking into consideration their appearance, meaning, and commercial impression, as well as differences in trade channels and market positioning;  (b) no reasonable consumer could possibly be confused as to source between Plaintiff's alleged trademarks, trade dress, and/or brand identity and Defendants' businesses, taking into consideration their appearance, meaning, and commercial impression, as well as differences in trade channels and market positioning; (c) Plaintiff's asserted trademarks are invalid or unenforceable because of Plaintiff's fraud on the USPTO and sham litigation to enforce alleged trademarks; (d) the alleged "Property Owning Entities" do not engage in any alleged infringing activity; (d) Plaintiff has not established ownership in its unregistered marks and trade dress; and (e) Plaintiff has not alleged the elements of trade dress infringement.

### SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands because Plaintiff has engaged in inequitable conduct related to the subject matter of this action, including attempting to assert overbroad trademark rights and

19

seeking to suppress lawful competition despite the absence of any likelihood of confusion.

## THIRD DEFENSE

Plaintiff's claims are barred because their asserted trademarks are invalid for failing to disclose known prior users of marks that Plaintiff's asserted litigation positions would consider to be confusingly similar.

## FOURTH DEFENSE

Plaintiff's claims for profits and damages are barred under 15 U.S.C. § 1111 because Plaintiff has failed to give proper notice of its trademark registrations by appropriate marking as required by statute.

## FIFTH DEFENSE

Plaintiff is not entitled to injunctive or declaratory relief because Plaintiff has not suffered, and cannot show it will suffer, irreparable harm, and because any injury Plaintiff claims is compensable, if at all, by an adequate remedy at law.

## SIXTH DEFENSE

Defendants' conduct has not caused, and is not likely to cause, confusion, mistake, or deception as to source, sponsorship, affiliation, connection, or approval.

## SEVENTH DEFENSE

Plaintiff's asserted unregistered trademarks are invalid, in whole or in part, because the claimed matter is functional, lacks distinctiveness, lacks secondary meaning, was improperly registered, or otherwise fails to satisfy the requirements of the Lanham Act.

## EIGHTH DEFENSE

Plaintiff's asserted trade dress is not inherently distinctive and, to the extent required, has not acquired secondary meaning, so it is not protectable as a trademark or trade dress.

## NINTH DEFENSE

Defendants did not act willfully, intentionally, knowingly, in bad faith, or with intent to confuse, deceive, trade on Plaintiff's goodwill, or violate Plaintiff's rights.  Therefore, Plaintiff's claims for willfulness, enhanced damages, statutory damages, profits, and attorney's fees are barred or limited.

## COUNTERCLAIMS

Defendants-Counterclaimants state their counterclaims against Plaintiff as follows:

### *Parties, Jurisdiction, and Venue*

151.    Defendants are all residents of the State of Georgia who have been named as defendants by Plaintiff in this action.

152.    On information and belief, Plaintiff Buc-ee's is a Texas limited partnership with a principal place of business at 327 FM 2004, Lake Jackson, Texas  77566.

153.    This Court has jurisdiction over the subject matter of this counterclaim pursuant to at least 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1332, 1338(a); and 28 U.S.C. § 1367(a).

154.    This Court has personal jurisdiction over Buc-ee's, and venue is proper in this District, at least because Buc-ee's has consented to jurisdiction and venue in this District by filing this action in this District, in response to which these counterclaims are asserted, which counterclaims arise out of the same transactions or occurrences as the claims asserted by Buc-ee's in this action.

### *Facts Common to All Counterclaims*

#### a) *Teddy's Market Business and Branding*

155.    There are currently two "Teddy's Market" locations in the metropolitan Atlanta, Georgia area.

22

### 1) *"Teddy's Market" Canton, Georgia Location*

156.   The first "Teddy's Market" opened in November 2024 at 149 Prominence Point Pkwy Ste 102, Canton, Georgia  30114.  It is a small convenience store operating on a single acre of land, in a 3500 square foot building, and having four (4) two-sided gas pumps under a single canopy branded with BP colors and logo.



157.   The monument sign on Prominence Point Pkwy for the Canton location does not contain the "Teddy's Market" name or logo.  Instead, the street sign shows only the BP logo and colors:



158.    The Canton location of "Teddy's Market" is near several residential neighborhoods and is strategically placed where those neighborhoods feed onto a larger street—Marietta Highway.

159.    The only "Teddy's Market" branding visible from the street is a storefront sign above the door to the convenience store:



160.    The Canton location of "Teddy's Market" is not visible from the nearest Interstate (I-575).

161.    "Teddy's Market" does not advertise along Interstate highways with billboards.

162.    The only advertising appearing on I-575 for the Canton location of "Teddy's Market" is on the blue DOT "Food" signs for I-575 Exit 14.

163.   The "Teddy's Market" in Canton is located more than 38 miles and 48 minutes away from the closest Buc-ee's location in Calhoun/Adairsville, Georgia, and is ***not*** located on the same I-75 traffic corridor as Buc-ee's, sitting instead approximately 20 miles away from I-75.

### 2)  *"Teddy's Market" Ball Ground, Georgia Location*

164.   The second "Teddy's Market" opened in January 2025 at 3010 Ball Ground Hwy, Ball Ground, Georgia  30107.  It is a small convenience store operating on 2 acres of land, in a 4500 square foot building, and having five (5) two-sided gas pumps under a single canopy branded with BP colors and logo.

25



165.    The monument sign on the street for the Ball Ground location does not contain the "Teddy's Market" name or logo.  Instead, the street sign shows only the BP logo and colors:



166.    The Ball Ground location of "Teddy's Market" is near several residential neighborhoods and the historic downtown village of Ball Ground, and it

is strategically placed where those neighborhoods feed onto a larger street, Ball Ground Highway.

167.   The only "Teddy's Market" branding visible from the street is on a storefront sign above the door to the convenience store:



168.   The Ball Ground location of "Teddy's Market" is not visible from any Interstate, including I-575, or from GA-515, which is the non-controlled-access extension of Interstate (I-575) that begins just north of Ball Ground.  The Ball Ground location of "Teddy's Market" sits approximately 2 miles away from I-575/GA-515.

169.   The "Teddy's Market" in Ball Ground is located more than 40 miles and 52 minutes away, over 2-lane state roads, from the closest Buc-ee's location in Calhoun/Adairsville, Georgia.  Moreover, the Ball Ground location is not located on the same I-75 traffic corridor as the closest Buc-ee's location in Calhoun/Adairsville, Georgia.

### 3) *"Teddy's Market" Advertising*

170. "Teddy's Market" stores do not advertise with billboards, along Interstate highways or otherwise.

171. "Teddy's Market" stores do not advertise "extensively."

172. The only advertising of "Teddy's Market" stores appearing on I-575 or GA-515 is on blue DOT "Food" signs at or near the offramps near a "Teddy's Market."

173. "Teddy's Market" stores do not have a website, costumed character for in-store appearances, loyalty programs, or a mobile app.

174. "Teddy's Market" stores have not retained any marketing or advertising agency, have no marketing plan, and have not evaluated, priced, or utilized any billboards for advertising.

175. "Teddy's Market" stores have not taken any material steps toward launching any private-labeled food items or souvenirs under the Teddy's Market Marks.

### 4) *"Teddy's Market" Branding and Trademark Applications*

176. The branding for "Teddy's Market" consists of (a) the name, "Teddy's Market" –always used together and never shortened to "Teddy's"; (b) the name "Teddy's Market" and a cartoon teddy bear character appearing above the

28

front door to its two store locations; and (c) variations of the teddy bear character appearing at various places within the stores, as shown in the examples below:



Canton, Interior



Ball Ground, Interior

177.   Neither the word mark "Teddy's Market" nor the composite word and logo mark that appear on "Teddy's Market" store signage are visible from a major highway.

178.   Neither the word mark "Teddy's Market" nor the composite word and logo mark appear on the canopies above the gas pumps.

179.   "Teddy's Market" stores do ***not*** have a large stand-alone sign bearing the Teddy's Market Marks in front of their two locations.

180.   Defendants do not brand any merchandise or products and do not sell any merchandise or products with either "Teddy's Market" or the composite word and logo mark in "Teddy's Market" stores.

181.    The *only* permanent signs displaying the "Teddy's Market" composite word and logo marks are on the building-mounted storefront signs located on the two "Teddy's Market" stores, the blue DOT "Food" signs appearing at or near the I-575 exits for the "Teddy's Market" stores, and inside the stores on open coolers, and above the cashier in the "Teddy's Market" store in Ball Ground.  (Excerpts of Dep. of K Ahuja, attached as Exhibit A, 187:16-190:10.)

182.    Defendant Teddy's Market applied to register the "Teddy's Market" word mark, logo mark, and two versions of the composite word and logo marks with the USPTO on May 28, 2024.  True and correct copies of the status pages and applications for Defendant Teddy's Market obtained from the United States Patent and Trademark Office are attached as Exhibit B.  *See* Defendants' Answers to paragraphs 48-51, above.  The logo and composite marks are shown below:



183.    Plaintiff filed oppositions to the applications to register the three design marks pictured above, but it did ***not*** oppose the application to register the word mark, TEDDY'S MARKET.  All four applications for the Teddy's Market Marks remain pending.

184.   In creating the name and logos for "Teddy's Market," Defendants Teddy's Market and Ahuja did not intend to infringe in any way on Plaintiff's Buc-ee's Marks, nor do they believe the resulting Teddy's Market Marks infringe in any way on any valid trademark or service mark of Buc-ee's.

### b) Buc-ee's Alleged Trademarks and Registrations

185.   Plaintiff's founder, Arch "Beaver" Applin, has explained that the origin of his nickname was a cartoon character named "Bucky Beaver."  *See* https://www.youtube.com/watch?v=AWxg4ksY-L4.  Mr. Applin has also stated that he derived Plaintiff's logo from the "Bucky Beaver" commercial character pictured below:



186.   Bucky Beaver was a famous 1950's and 1960's animated television commercial character created by Disney for Ipana toothpaste.

187.   According to the allegations in the FAC, Plaintiff opened the first "Buc-ee's" convenience store in the Lake Jackson, Texas area, and has grown to more than 50 establishments spanning 12 states.  FAC ¶¶ 23, 25.  "Buc-ee's travel

centers are supported by prolific billboard advertising beginning hundreds of miles away from a location and increasing in frequency as the location gets closer." FAC ¶ 26. Plaintiff's "travel centers" are "famous for … massive facilities and parking lots, which generally span over fifty thousand square feet and boast dozens of fueling positions. Plaintiff's large-scale convenience stores also offer a variety of flavorful Buc-ee's house-brand food items and an array of Buc-ee's branded merchandise and souvenirs." FAC ¶ 27.

188. In fact, the closest Buc-ee's location to any "Teddy's Market" location is in Calhoun/Adairsville, Georgia on more than 22 acres of land, and boasts 120 regular and diesel fueling stations and a 53,000 square foot convenience store.

189. Below are true and accurate copies of aerial pictures of the Buc-ee's location in Calhoun/Adairsville, Georgia:





190.    In the FAC, Buc-ee's asserts three (3) federal trademark registrations

for the word mark BUC'EE'S ("the Buc-ee's Word Marks"), and at least three (3)

federal trademark registrations for the its character-based logos ("the Buc-ee's Logo Marks").  FAC ¶¶ 31-35.

191.   Each of the marks listed in the table below appears either in a table in the FAC, or in Ex. C to the FAC (Dkt. 14-3).  This table includes each respective registration number, serial number, date of application, date of registration, and class:

| Mark | Reg. No. | App. Date | Reg. Date | Claimed First Use in Interstate Commerce | Int'l Class: Goods/Services |
|---|---|---|---|---|---|
| BUC-EE'S | 3,763,277 | 4/4/2006 | 3/23/2010 | 7/1/1982 | 035: Retail store services featuring convenience store items and gasoline |
| BUC-EE'S | 4,007,063 | 10/16/2009 | 8/2/2011 | 8/2006 | 016, 021, 025, 029, 030, 031, 035: (multiple products) |
| BUC-EE'S | 4,973,184 | 10/23/2015 | 6/7/2016 | 8/1/2006 | 004:  Motor Fuel |
| | 3,246,893 | 4/5/2006 | 5/29/2007 | 7/1/1982 | 035: Retail store services featuring convenience store items and gasoline |
| | 7,419,559 | 5/30/2023 | 6/10/2024 | 1982 | 035: Retail store services featuring convenience store items and gasoline |

| Mark | Reg. No. | App. Date | Reg. Date | Claimed First Use in Interstate Commerce | Int'l Class: Goods/Services |
|---|---|---|---|---|---|
| | 4,973,185 | 10/23/2015 | 6/7/2016 | 10/23/2015 | 004: Motor Fuel |
| | 6,421,518 | 4/22/2019 | 7/13/2021 | 5/7/2020 | 018, 021, 028: Pet clothing, pet collars, pet leashes, bot ties for pets |
| | 6,421,517 | 4/22/2019 | 7/13/2021 | 5/7/2020 | 018, 021, 028: Pet clothing, pet collars, pet leashes, bot ties for pets |
| | 4,973,077 | 10/20/2015 | 6/7/2016 | 7/5/2014 | 036: Credit card services |
| | 4,316,461 | 7/30/2012 | 4/9/ 2013 | 8/2006 | 016, 021, 026, 028, 029, 030, 031, and 035: (multiple products) |

192. In addition, the following marks were listed in paragraph 34 of the FAC, but no further information about them was included in the FAC:

| Mark | Reg. No. | App. Date | Reg. Date | Claimed First Use in Interstate Commerce | Int'l Class: Goods/Services |
|---|---|---|---|---|---|
| | 4,007,064 | 10/15/2009 | 8/2/2011 | 8/2006 | 012, 016, 025, 028, 029, 030, 031, 035, |
| | 8,113,899 | 1/13/2025 | 1/27/2026 | 1982 (depends on class) | 004, 005, 012, 014, 016, 020, 021, 022, 025, 026, 028, 029, 030, 032, 035, 037, 043: (multiple) |
| | 8,113,900 | 1/13/2025 | 1/27/2026 | 1982 (depends on class) | 004, 005, 012, 014, 016, 020, 021, 022, 025, 026, 028, 029, 030, 032, 035, 037, 043: (multiple) |

193.    True and correct copies of the Status Pages, applications, and registrations, obtained from the United States Patent and Trademark Office, for the marks identified in Paragraphs 191 and 192 above are attached as Exhibit C. Collectively, the marks identified in Paragraphs 191 and 192 are referred to herein as "Plaintiff's Registered Marks."

194.    As reflected in Exhibit C, Plaintiff's USPTO-approved descriptions of its registered design marks are as follows:

36

| Mark | Reg. No. | Description of Mark |
|---|---|---|
| | 3,246,893 | The mark consists of a brown and white beaver head wearing a red baseball cap within a yellow circle all outlined in black. |
| | 7,419,559 | The mark consists of a cartoon image of a beaver head wearing a hat with a circle around it. |
| | 4,973,185 | The mark consists of a cartoon image of a beaver head wearing a hat with a circle around it. |
| | 6,421,518 | The mark consists of a cartoon image of a beaver head wearing a hat with a circle around it. |
| | 6,421,517 | The mark consists of the head of a brown and white beaver with a red tongue, black nose, white teeth, and black eyes wearing a red baseball cap with a brown, black, and white ear showing through the side of it. The beaver design is within a yellow circle that is outlined in black. |
| | 4,973,077 | The mark consists of a cartoon image of a beaver head wearing a hat with a circle around it. |
| | 4,316,461 | The mark consists of a cartoon image of a beaver head wearing a hat with a circle around it. |

37

| Mark | Reg. No. | Description of Mark |
|---|---|---|
| | 4,007,064 | The mark consists of the head of a brown and white beaver with a red tongue, black nose, white teeth, and black eyes wearing a red baseball cap with a brown, black, and white ear showing through the side of it.  The beaver design is within a yellow circle that is outlined in black. |
| | 8,113,899 | The mark consists of the head of a brown and white beaver outlined in black with a red tongue, black nose having a white tip, white teeth, and black and white eyes wearing a red baseball cap outlined in black with a brown, black, and white ear showing through the side of it. The beaver design is within a yellow circle that is outlined in black. |
| | 8,113,900 | The mark consists of a cartoon image of a beaver head wearing a hat with a circle around it. |

195.    In each of the applications which resulted in Plaintiff's Federal Registrations, Buc-ee's made the following declaration:

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in

commerce; to the best of his/her knowledge and belief *no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive*; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

(Emphasis added.)

### c) Buc-ee's Use of its Alleged Marks in Commerce

196.   Buc-ee's alleges that it operates travel centers, which are "large-scale convenience stores" located along major interstates and highways.  FAC ¶¶ 27, 81. Buc-ee's refers to these massive stores as "highway oases."

197.   Buc-ee's opened its first store in the early 1980s in Texas.  In 2019, it started to expand to other states, opening locations in Alabama in 2019, Georgia in 2020, Florida in 2021, Kentucky, South Carolina, and Tennessee in 2022, Missouri in 2023, Colorado in 2024, Mississippi and Virginia in 2025, and most recently Ohio in 2026.

198.   Buc-ee's claims to own trademark rights in BUC-EE's and a logo consisting of, in part, a cartoon beaver.

199.   Buc-ee's admittedly derived its logo from the Ipana cartoon logo "Bucky Beaver" pictured below:



200.    Buc-ee's has repeatedly represented to the USPTO that its beaver logo "consists of the head of a brown and white beaver with a red tongue, black nose, white teeth, and black eyes wearing a red baseball cap with a brown, black, and white ear showing through the side of it, where the beaver design is within a yellow circle that is outlined in black."  The beaver logo is shown below:



### d) No Similarity in the Marks

201.    Plaintiff does not use the term "market" as part of its Buc-ee's Marks.

202.    In paragraph 82 of the FAC in this case, Plaintiff has asserted a different list of "salient portions" of the Buc-ee's Marks, including such unprotectible and common cartoon characteristics as:  "arbitrarily wearing hats"; "white specular highlights on their eyes"; "solid black nose with a single white

specular highlight"; "a glimpse of a red/pink tongue"; "lighter coloration around their mouths"; "black outlines"; "a contrasting geometric shape encasing the character." Such elements are necessary aspects to any cartoon character design and predate Plaintiff's alleged trademark rights by many, many years, and Plaintiff's suggestion that it owns any rights in these common cartoon elements is false.

203. Astoundingly, Plaintiff also asserts in paragraph 82 that "Teddy's" "has similarities to the 'Buc-ee's' name." Plaintiff's assertion is false.

204. In other litigation, Buc-ee's has alleged that the "salient," "important aspects" of the Buc-ee's Logo Marks include the "use of a friendly smiling cartoon animal oriented within a circle with a yellow background encompassed by a black circle"; the positioning of the animal in a "right facing angle"; "the use of a hat placed on a brown animal with a red tongue and black nose"; and "prominent use of sharp black edges of the anthropomorphic character." *E.g.*, *Buc-ee's, Ltd. v. Super Fuels Lombardy, LLC*, No. 3:25-cv-00075, Compl., ¶ 39, ECF No. 1 (N.D. Tex.); *Buc-ee's, Ltd. v. 2 Wiseman Enters., LLC*, No. 3:24-cv-05088, Compl., ¶ 22, ECF No. 1 (W.D. Mo.); *Buc-ee's, Ltd. v. EJL Acquisitions, LLC, No. 6:25-cv-03060*, Compl., ¶ 43, ECF No. 1 (W.D. Mo.).

205. Also in other litigation, Buc-ee's has alleged that the "important aspects" of the allegedly infringing Barc-ee's composite marks include the "use of

41

curving word style, near the logo image, as Buc-ee's does in many cases when using the Buc-ee's Word Trademark and the Buc-ee's Logo [Marks] together." *E.g.*, *Buc-ee's, Ltd. v. EJL Acquisitions, LLC*, No. 6:25-cv-03060, Compl., ¶ 38, ECF No. 1 (W.D. Mo.).

206.   Defendants' "Teddy's Market" Marks do not include at least the following "salient" elements of Plaintiff's Buc-ee's Logo Marks:

a)  An animal similar to a beaver;

b)  A cartoon animal oriented within a circle;

c)  A yellow background encompassed by a black circle; or

d)  The positioning of the animal at a right facing angle.

207.   Buc-ee's does not have a federally registered mark for its alleged "iconic brand identity."  FAC ¶¶ 97, 109, 120.

208.   Buc-ee's has alleged that its "brand identity" includes (a) "prolific billboard advertising," (b) "massive facilities . . . which generally span over fifty thousand square feet"; (c) numerous fuel pumps (often offering "dozens of fueling stations"; (d) convenience stores "offer[ing] a variety of flavorful Buc-ee's house-brand food items and an array of Buc-ee's-branded merchandise and souvenirs." FAC ¶¶ 26-27.

209.   Defendants' "Teddy's Market" stores do not use any of these elements of Buc-ee's brand identity:

42

a. Defendants do not advertise "Teddy's Market" stores on any billboards.

b. Defendants "Teddy's Market" stores are 3500 and 4500 square feet.

c. Defendants' "Teddy's Market" stores have four and five two-sided fuel pumps.

d. Defendants' "Teddy's Market" stores do not sell any house-brand food items or branded merchandise or souvenirs.

### e) *No Confusion*

210. Defendants are not aware of any actual confusion among consumers as between "Teddy's Market" and Plaintiff's Buc-ee's Marks.

211. In fact, no customer or third party has ever asked whether a "Teddy's Market" store is affiliated with Buc-ee's, or expressed any confusion between the two.

212. The FAC does not allege any instances of any actual confusion among consumers as between "Teddy's Market" and Plaintiff's Buc-ee's Marks.

213. The lack of any confusion is not surprising, given the significant differences between the businesses and branding of "Teddy's Market" and Plaintiff's Buc-ee's stores.

214. In fact, no reasonable consumer could possibly be confused. This is a sentiment widely held by the consuming public as reflected in responses to news stories regarding this lawsuit attached as Exhibit D.

### f) Anthropomorphic Cartoon Animals

215.   From historical illustrations of Aesop's fables to Mickey Mouse, Bugs Bunny, and Chester Cheetah, anthropomorphic features in hands, posture, and facial mechanics and features have become universal conventions used to make animal figures (and even other non-human—sometimes even inanimate objects) relatable to a human audience.

216.   Similarly, artists have used specular highlights (better known as "catch lights") for centuries to signify vitality and realism within a stylized medium.  They represent a basic tool of rendering volume, not a brand-specific design feature.

217.   Buc-ee's beaver logo incorporates a range of basic elements which are fundamental characteristics of the genre of anthropomorphic cartoon imagery including anthropomorphism, black outlining, solid black nose, white specular highlights in eyes and on noses, and expressive eyes.

### g) Convenience Stores Commonly Use Cartoon Animals in Branding

218.   The use of cartoon animals by convenience stores in trademarks is as old and common as convenience stores themselves.

219.   Sinclair Oil pioneered modern gas stations in the 1920s.  It started using the cartoon dinosaur trademark shown below to promote its goods and services as early as the 1930s.  It registered the cartoon dinosaur trademark with

44

the USPTO in the 1970s and it still uses its mark today nearly a century after it first

started:



220.    Also in the 1930s, the Stinker Stores started using a cartoon skunk in

its trademarks to promote goods and services in connection with its convenience

stores.  The Stinker Stores have registered various versions of its cartoon skunk

with the USPTO over the years and it continues to use cartoon skunks in its

trademarks to this day:





221.   In the 1960s, Esso (now owned by ExxonMobil) employed a cartoon tiger in its celebrated "Put a Tiger in Your Tank" campaign, with tiger branding like the examples below used at gas stations nationwide:



The tiger was first used in 1919 in Norway, and is still used in various forms to this day.  Exxon Mobil has used and registered a cartoon tiger in connection its Tiger Mart® convenience store network and branding on fuel dispensers at retail gas stations since at least the early 1990s.



222.   In the 1970s, convenience store chain Wawa started using a trademark with a cartoon goose to promote its goods and services.  It has registered its goose trademarks with the USPTO over the years and it continues to use the marks today. The company's costumed mascot, "Wally Goose," also regularly attends grand openings and community events:








223.   The family-owned business Liberty Truck Center (now Onvo) has used and registered a cartoon owl mark in connection with convenience stores since at least the 1980s:



224.   Exxon Mobil has used and registered a cartoon tiger in connection with convenience store services offered at retail gas stations since at least the early 1990s:

225.   Huffman Oil Company has used and registered a cartoon coyote in connection with its retail store services featuring convenience store items and gasoline since the early 2000s:



226.    There are numerous other examples from the past century of companies that have used and registered trademarks with cartoon animals to promote goods and services in connection with convenience stores.

227.    No single entity has exclusive rights to the general concept of using cartoon animals, or even anthropomorphic cartoon animals, in trademarks to promote goods and services in connection with convenience stores.

### h) Buc-ee's Trademark Enforcement Litigation

228.    Buc-ee's has a reputation for aggressively enforcing its alleged trademark rights, with some commentators characterizing the company as a "trademark bully" due to its frequent lawsuits against smaller businesses using cartoon animal marks.  Indeed, the company has a history of suing smaller companies that are using marks with cartoon animals in the states in which Bucee's has expanded or is soon to expand, frequently forcing those smaller companies to settle out of court.  Below are examples of the types of cartoon animal marks Buc-ee's has previously enforced against:



229. More recently, Buc-ee's has asserted its trademark claims against the following mascot logos including various cartoon animal depictions of a moose, a dog in a car drinking coffee, a caped dog, a waving beaver, a mongoose, a duck:



50



230.   Plaintiff's litigation strategy effectively claims the exclusive right to use any and all cartoon animal logos in connection with convenience store services.

231.   Plaintiff's trademark registrations, however, do not extend to cover all cartoon animal logos in connection with convenience store services.

232.   Similarly, Plaintiff's common law trademark rights do not extend to cover all cartoon animal logos in connection with convenience store services.

233.   Plaintiff's aggressive litigation tactics against dissimilar carton animal mascots and logos are specifically designed to extend Plaintiff's trademark rights far beyond Plaintiff's actual common law or registered rights.

234.   Plaintiff uses actual and threatened litigation, and the high cost of defending such litigation, to intimidate competitors into surrendering valid rights in mascots and logos that no reasonable consumer could possibly confuse with Plaintiff's Buc-ee's Logo Marks.

235.   Buc-ee's overzealous, groundless, and bad-faith trademark litigation has become so absurd and widely known that it has recently been featured in a

51

front-page article in *The Wall Street Journal* a true and correct copy of which is attached as Exhibit E.

236.    In addition, the absurdity of Buc-ee's overzealous, groundless, and bad-faith trademark litigation was roundly skewered in a 14-minute segment on the HBO Max comedy series, *Last Week Tonight with John Oliver*, which included the launch of parody merchandise at https://www.buc-off.com/, essentially daring Plaintiff to sue.  *See Last Week Tonight with John Oliver*, Season 13, Episode 18, Timestamp -14:02 to the end, HBO Max July 26, 2026.

237.    Simply put, Buc-ee's is a trademark bully.  It is attempting to use litigation and intimidation to expand unlawfully its asserted trademark rights far beyond the scope of what it has established in the marketplace or by way of its federal trademark registrations.

238.    Buc-ee's frivolous litigation campaign is improper, illegal, and should be stopped.

### COUNTERCLAIM COUNT I
### *Declaratory Judgment of Non-Infringement of Plaintiff's Registered Marks – No Likelihood of Confusion*

239.    Defendants incorporate and re-allege paragraphs 151 through 238, above, as if set forth verbatim herein.

240.    An actual, substantial, and justiciable controversy under 28 U.S.C. §§ 2201–2202 exists between Plaintiff and Defendants concerning whether

Defendants' alleged use of the name Teddy's Market and use of a teddy bear mascot and logo ("the Teddy's Market Marks") infringes upon Plaintiff's alleged rights in its "Buc-ee's" word and character marks ("the Buc-ee's Marks").

241. Plaintiff has asserted in this lawsuit that Defendants' use of the Teddy's Market Marks creates a likelihood of consumer confusion, mistake, or deception.

242. Defendants' use of the Teddy's Market Marks, however, does not infringe, dilute, or otherwise violate any valid trademark rights held by Plaintiff.

243. No likelihood of confusion, mistake, or deception among consumers between Plaintiff's goods/services and Defendant's goods/services is likely or even plausible at least in light of the following:

a) **Visual and Phonetic Differences:** The marks are distinct in sound, appearance, connotation, and commercial impression and the Teddy's Market Marks do not include elements which Plaintiff has stated to the United States Patent and Trademark Office and represented in U.S. courts are the salient elements of Plaintiff's Buc-ee's Logo Marks.

b) **Different Channels of Trade:** The parties market, advertise, and sell their respective goods/services through entirely separate channels of trade to different target audiences and in different geographic locations.

c) **No Intent**:  Defendants did not and do not intend to copy Plaintiff's brand or otherwise pass off its goods as those of Plaintiff.

d) **No Actual Confusion**: Defendants are unaware of any instances of actual consumer confusion despite concurrent use of the marks in the marketplace.

244.    Defendants have suffered, and will continue to suffer, immediate and irreparable injury to its business, business operations, market reputation, and commercial goodwill due to Plaintiff's adverse claims and continued litigation.

245.    Defendants are entitled to a judicial declaration that the use, registration, and promotion of the Teddy's Market Marks does not constitute trademark infringement or unfair competition, does not create a likelihood of confusion, does not constitute unjust enrichment or deceptive trade practices, and does not violate any federal, state, or common law rights of Plaintiff.

### *COUNTERCLAIM COUNT II*
### *Declaratory Judgment of Non-Infringement of Plaintiff's Unregistered Marks – No Likelihood of Confusion*

246.    Defendants incorporate and re-allege paragraphs 151 through 238, above, as if set forth verbatim herein.

247.    An actual, substantial, and justiciable controversy under 28 U.S.C. §§ 2201–2202 exists between Plaintiff and Defendants concerning whether Defendants' alleged use of the name Teddy's Market and use of a teddy bear

mascot and logo ("the Teddy's Market Marks") infringes upon Plaintiff's alleged rights in its "Buc-ee's" word and character marks ("the Buc-ee's Marks").

248.   Plaintiff has asserted in this lawsuit that Defendants' use of the Teddy's Market Marks creates a likelihood of consumer confusion, mistake, or deception.

249.   Defendants' use of the Teddy's Market Marks, however, does not infringe, dilute, or otherwise violate any valid trademark rights held by Plaintiff.

250.   No likelihood of confusion, mistake, or deception among consumers between Plaintiff's goods/services and Defendant's goods/services is likely or even plausible at least in light of the following:

e) **Visual and Phonetic Differences:** The marks are distinct in sound, appearance, connotation, and commercial impression and the Teddy's Market Marks do not include elements which Plaintiff has stated to the United States Patent and Trademark Office and represented in U.S. courts are the salient elements of Plaintiff's Buc-ee's Logo Marks.

f) **Different Channels of Trade:** The parties market, advertise, and sell their respective goods/services through entirely separate channels of trade to different target audiences and in different geographic locations.

g) **No Intent**:  Defendants did not and do not intend to copy Plaintiff's brand or otherwise pass off its goods as those of Plaintiff.

55

h) **No Actual Confusion**: Defendants are unaware of any instances of actual consumer confusion despite concurrent use of the marks in the marketplace.

251. Defendants have suffered, and will continue to suffer, immediate and irreparable injury to its business, business operations, market reputation, and commercial goodwill due to Plaintiff's adverse claims and continued litigation.

252. Defendants are entitled to a judicial declaration that the use, registration, and promotion of the Teddy's Market Marks does not constitute trademark infringement or unfair competition, does not create a likelihood of confusion, does not constitute unjust enrichment or deceptive trade practices, and does not violate any federal, state, or common law rights of Plaintiff.

### COUNTERCLAIM COUNT III
### Declaratory Judgment of No Unfair Competition

253. Defendants incorporate and re-allege paragraphs 151 through 238, above, as if set forth verbatim herein.

254. An actual, substantial, and justiciable controversy under 28 U.S.C. §§ 2201–2202 exists between Plaintiff and Defendants concerning whether Defendants' alleged use of the name Teddy's Market and use of a teddy bear mascot and logo ("the Teddy's Market Marks") infringes upon Plaintiff's alleged rights in its "Buc-ee's" word and character marks ("the Buc-ee's Marks").

255. Plaintiff has asserted in this lawsuit that Defendants' use of the Teddy's Market Marks creates a likelihood of consumer confusion, mistake, or deception.

256. Defendants' use of the Teddy's Market Marks, however, does not constitute any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiff with Defendants, or to deceive as to the source origin of goods.

257. Defendants are entitled to a judicial declaration that the use, registration, and promotion of the Teddy's Market Marks does not constitute unfair competition, does not create a likelihood of confusion, does not constitute unjust enrichment or deceptive trade practices, and does not violate any federal, state, or common law rights of Plaintiff.

## *COUNTERCLAIM IV*
### *Declaratory Judgment of Non-Infringement of and No Unfair Competition of Plaintiff's Trade Dress*

258. Defendants incorporate and re-allege paragraphs 151 through 238, above, as if set forth verbatim herein.

259. An actual, substantial, and justiciable controversy under 28 U.S.C. §§ 2201–2202 exists between Plaintiff and Defendants concerning whether Defendants' Teddy Marks and use thereof, and Defendants' alleged "Infringing

Brand Identity" of an anthropomorphic animal mascot depicted through a recurring logo, in-store renderings, and a store-entrance statue (the "Alleged Infringing Brand Identity") in connection with convenience store and retail services infringes upon Plaintiff's alleged rights in its trade dress, and/or brand identity.

260.    Plaintiff's alleged rights in the its unregistered trade dress, and/or brand identity are non-distinctive and do not perform any source-identifying function, and thus cannot constitute false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiff with Defendants, or to deceive as to the source origin of goods.

261.    Defendants have suffered, and will continue to suffer, immediate and irreparable injury to its business, business operations, market reputation, and commercial goodwill due to Plaintiff's adverse claims and continued litigation.

262.    Defendants are entitled to a judicial declaration that the use, registration, and promotion of the Teddy's Market Marks does not constitute trademark infringement or unfair competition, does not create a likelihood of confusion, does not constitute unjust enrichment or deceptive trade practices, and does not violate any federal, state, or common law rights of Plaintiff.

## COUNTERCLAIM COUNT V
### *Declaratory Judgment of Unenforceability Due to Unclean Hands and Abusive Sham Litigation Tactics*

263.    Defendants incorporate and re-allege paragraphs 151 through 238, above, as if set forth verbatim herein.

264.    An actual and justiciable controversy exists between Plaintiff and Defendants concerning the enforceability of Plaintiff's Buc-ee's Marks under 28 U.S.C. §§ 2201–2202.

265.    Plaintiff has asserted in this lawsuit alleged exclusive trademark rights against Defendants related to Plaintiff's Buc-ee's Marks.

266.    Under the doctrine of unclean hands, a trademark owner is barred from enforcing its mark if it has engaged in unconscionable, fraudulent, or bad-faith conduct directly related to the acquisition or enforcement of the asserted marks.  In this case, Plaintiff has engaged in such conduct both in the acquisition and the enforcement of the Buc-ee's Marks.

267.    First, Plaintiff has acted with unclean hands by perpetrating a fraud on the U.S. Patent and Trademark Office ("USPTO").  Specifically, Plaintiff knowingly made false material representations regarding its exclusive right to use the Buc-ee's Marks by making the following declaration (as noted above) in applying for each of the federally registered marks asserted in this case:

> no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof *or in such*

***near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive***.

(Emphasis added.)

268. These declarations, made on each of the application dates (ranging from 2006 to 2025) identified in the charts of Buc-ee's Marks, above, constitute knowingly false and material misrepresentations to the USPTO concerning Plaintiff's alleged exclusive right to use the Buc-ee's Marks because, on information and belief, Plaintiff knew at the time it made the above declarations in 2006-2025 that other competitors were using (a) characters, marks, logos, and mascots consisting of cartoon animals, including anthropomorphic cartoon animals (as described above), and (b) word marks at least as similar as Plaintiff alleges "Teddy's Market" is to "Buc'ee's" (*see* FAC ¶ 47), including Bucky's® (filed January 4, 2006 and registered May 4, 2010 for "retail store services featuring convenience store items and gasoline") and Stuckey's® (registered in 1974 for "motor vehicle refueling services," and first used in commerce January 1, 1947).

269. These characters, marks, logos, mascots, and names were well known throughout the country before Plaintiff's applications and declarations were filed, especially in Plaintiff's industry consisting of operators of gasoline stations and convenience stores. As a result, Plaintiff must have known about them.

60

270. It is simply not plausible that Plaintiff did not know about these other uses at the time Plaintiff made these declarations, especially because all of them would fall within the scope of the targets Buc-ee's has claimed to be infringing since its overzealous litigation campaign began. For example, Plaintiff sued the owner of the Bucky's mark in 2008, and again in 2017, and now Plaintiff itself owns the earlier-filed Bucky's mark. Simply put, Buc-ee's litigation positions deem these competitor uses confusingly similar to its registered Buc-ee's Marks, such as by incorporating cartoon animals (anthropomorphic or not) and, if that is Plaintiff's belief, it was obligated to disclose these other competitor users to the USPTO and to ***not*** declare that ***Plaintiff*** had the exclusive right to use the marks it was applying to register.

271. Upon information and belief, at the time it made these declarations Buc-ee's knew of the prior use of one or more of the cartoon animal character marks Buc-ee's identified in paragraphs 219 – 225, above, and one or more similar word marks used for similar products and services,

272. On information and belief, Plaintiff's sworn representations that it had exclusive rights to use the above Buc-ee's Marks were knowingly false because at the time they were made (a) Buc-ee's was aware that other cartoon animal logos and mascots, including anthropomorphic cartoon animal logos and mascots, were being used in the United States to identify gas station and convenience store

61

products and services, and (b) Buc-ee's was aware of other word marks being used to identify gas station and convenience store products and services that are more similar to Buc-ee's word mark than the accused Teddy's Market, including Bucky's® and Stucky's®.

273. Second, Plaintiff has acted with unclean hands by utilizing its fraudulently obtained registrations as a weapon in a broader scheme of objectively baseless, abusive litigation against smaller competitors in a calculated effort to expand the scope of Plaintiff's Buc-ee's Marks to cover any cartoon animal mascot, specifically those having the commonplace elements of a friendly expression, black outlining, solid black nose, specular highlights in eyes and on noses, and expressive eyes.

274. Plaintiff has systematically issued meritless cease-and-desist threats and filed bad-faith lawsuits against Defendants and numerous other competitors to monopolize the market and suppress fair competition and unfairly and unreasonably expand the scope of Plaintiff's alleged trademark rights.

275. Plainiff filed a lawsuit claiming a likelihood of confusion with Defendants' Teddy's Market word mark but Plaintiff did not oppose the application for Defendants' Teddy's Market word mark.

276. Plaintiff filed trademark oppositions against Defendant's pending applications and filed this lawsuit which make allegations which are in direct

contradiction to Plaintiff's past positions.  For example, Defendants' Marks do not include the following "salient" elements of Plaintiff's Buc-ee's Logo Marks:

a)  An animal similar to a beaver;

b)  A cartoon animal oriented within a circle;

c)  A yellow background encompassed by a black circle; and

d)  The positioning of the animal at a right facing angle.

277.   Plaintiff's fraudulent trademark filings and subsequent abusive enforcement tactics bear an immediate and necessary relation to the exact trademark rights Plaintiff is assert against Defendants in this action.

278.   Because of Plaintiff's unconscionable fraudulent and abusive litigation practices, Plaintiff's Buc-ee's Marks are rendered unenforceable in equity.

### COUNTERCLAIM COUNT VI
### *Cancellation of Buc-ee's U.S. Trademark Registrations (Fraud on the USPTO)*

279.   Defendants incorporate and re-allege paragraphs 151 through 238, above, as if set forth verbatim herein.

280.   Because this action involves Plaintiff's claims of infringement of the registered Buc-ee's Marks, pursuant to 15 U.S.C. § 1119, this Court is empowered to determine Plaintiff's right to the registration of Buc-ee's Marks and to order the cancellation of those registrations.

281.    One of the grounds upon which a mark may be cancelled at any time is if the registration was obtained fraudulently.  15 U.S.C. § 1064(3).

282.    The registered Buc-ee's Marks should be cancelled because they were obtained by fraud.  Specifically, Buc-ee's made the following declaration (as noted above) in applying for each of the registered Buc-ee's Marks asserted in this case:

> no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof *or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive*.

(Emphasis added.)

283.    These declarations constitute knowingly false and material misrepresentations to the USPTO concerning the registered Buc-ee's Marks because, on information and belief, Buc-ee's knew at the time it made the above declarations of the use of other marks similar or identical to marks that Buc-ee's has claimed in this and other lawsuits are confusingly similar to its registered Buc-ee's Marks, such as by incorporating cartoon animals (anthropomorphic or not). Specifically, upon information and belief, Buc-ee's knew at the time it made these declarations of the prior use of one or more of the cartoon animal character marks Buc-ee's identified in paragraphs 219 – 225, above, and one or more similar word marks used for similar products and services, including Bucky's™ and

64

Stuckey's®, that would have prevented Plaintiff from registering its Buc-ee's Marks.

284. Plaintiff made these misrepresentations intentionally and in order to induce the USPTO to grant Buc-ee's applications to register each of the Buc-ee's Marks.

285. As a result, the declarations made to the USPTO in the applications to register the Buc-ee's Marks were knowingly false, the registrations were fraudulently obtained, and the registered Buc-ee's Marks should all be cancelled.

286. Defendants have been damaged and will continue to be damaged by Plaintiff's continued ownership and use of the fraudulently obtained registrations for the Buc-ee's Marks. Plaintiff has wielded its fraudulently obtained registrations to pursue this litigation.

287. If Plaintiff's Buc-ee's Marks are not cancelled, Plaintiff will enjoy unlawful gain and advantage to which it is not entitled under the Lanham Act, 15 U.S.C. §§ 1501 *et seq.*

## **PRAYER FOR RELIEF ON COUNTERCLAIMS**

WHEREFORE, Defendants respectfully request the court to enter judgment in their favor and against Plaintiff, ordering the following relief:

a) A declaratory judgment that Defendants' use of the Teddy's Market Marks does not constitute trademark infringement or unfair competition, does not

65

create a likelihood of confusion, does not constitute unjust enrichment or deceptive trade practices, and does not violate any federal, state, or common law rights of Plaintiff.

b) An injunction restraining Plaintiff from threatening or filing a trademark infringement lawsuit against Defendant based on the Buc-ee's Marks or the Teddy's Market Marks.

c) An order cancelling the registration of each and every Buc-ee's Mark identified in the FAC.

d) An order instructing Plaintiff to withdraw its opposition in the USPTO to the pending Teddy's trademark applications and enjoining any further such oppositions.

e) An award to Defendant of its reasonable attorneys' fees, costs, and disbursements incurred in this action.

f) Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Defendants demand a trial by jury of all issues so triable.

This 31st day of July 2026.

KENT & RISLEY LLC

/s/ *Olivia E. Marbutt*
Daniel A. Kent
 dankent@kentrisley.com
 Tel: (404) 585-4214
 Fax: (404) 829-2412
Olivia E. Marbutt
 oliviamarbutt@kentrisley.com
 Tel: (404) 855-3865
 Fax: (770) 538-1715


KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Attorneys for Defendants